**Edna H. BEAR, individually and on behalf of all other persons similarly situated, Plaintiff,**

v.

**Thomas L. OGLEBAY, and Advantage Capital Corporation, a New York Corporation, Defendants.**

**Civ. A. No. 88–0029–M.**

United States District Court, N.D. West Virginia.

April 23, 1992.

James J. Matzureff, Martinsburg, W.Va., Douglas A. Greenlee, Winchester, Va., for plaintiff.

George E. Snyder, Jr., Frederick, Md., David Clarke, Jr., Baltimore, Md., James A. Varner, Clarksburg, W.Va., for defendant.

## ORDER

MAXWELL, Chief Judge.

Plaintiff instituted the above-styled civil action on June 2, 1988 seeking to recover damages for investment loss allegedly occasioned by violations of federal securities laws and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Also included in the Complaint were pendent state law claims. Currently pending before the Court are Plaintiff's Motion for Class Certification, Plaintiff's Motion for Leave to Amend the Complaint, Defendants' Motion for Judgment on the Pleadings on count I of the Complaint, and Defendants' Motion for Leave to File an additional memorandum regarding the issue of class certification. A review of the record in this matter demonstrates that these motions have been thoroughly briefed by the parties and are ready for consideration by the Court.

Defendant Advantage Capital Corporation is a securities firm registered as a broker-dealer with the Securities and Exchange Commission. Defendant Oglebay was a registered representative of Advantage Capital Corporation. Oglebay also represented other parties, including Governmental Financial Services, Inc. ("GFS"). Plaintiff is an investor who maintained an investment account with Oglebay.

Plaintiff on four occasions invested money, through Oglebay, in "leases" offered by GFS. Payments on these investments were subsequently placed in mutual funds administered by Advantage Capital Corporation. As explained in documents furnished to GFS investors upon receipt of their money, these "leases" were actually unsecured promissory notes. GFS eventually declared bankruptcy, with the result that unsecured creditors such as Plaintiff received little or no repayment on the promissory notes. Plaintiff filed this action to recover the invested funds from Defendants.

Plaintiff initially defined the class sought to be represented as all West Virginia residents who had purchased GFS "leases" from Oglebay. In the proposed Amended Complaint, Plaintiff seeks to define the class as all residents of West Virginia, Maryland, and Pennsylvania who purchased GFS "leases" from Oglebay and five other individuals who also represented Advantage Capital Corporation. Plaintiff still seeks to recover only from the two Defendants originally named in the pleadings.

The Court will first examine Defendant Advantage Capital Corporation's Motion to file a supplemental memorandum. Defendant premises this Motion upon the alleged vagueness of Plaintiff's Motion for Class Certification. Plaintiff opposes this Motion

on the basis of Local Rule 2.07, which limits the number of briefs submitted regarding a motion. In light of the sound reasons behind Local Rule 2.07, and considering that the issue of class certification has already been extensively discussed by the parties, it is

ORDERED that Defendant Advantage Capital Corporation's Motion to file supplemental memorandum be, and the same is hereby, DENIED.

■ From the text of Rule 23, Federal Rules of Civil Procedure, it is clear that a class may be certified by the Court only if Plaintiff initially satisfies each of the four threshold requirements of Rule 23(a):

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interest of the class.

The party seeking certification bears the burden of establishing that all four prerequisites are met. *International Woodworkers of America, AFL–CIO v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir.1981). In addition to meeting the requirements of Rule 23(a), "the action must fall within one of the three categories of class actions described in Rule 23(b)....)" *Christman v. American Cyanamid Co.*, 92 F.R.D. 441, 446 (N.D.W.Va.1981).

■ Plaintiff is unable to precisely determine the size of the class sought to be represented. However, the Court is satisfied from the pleadings that any class would be sufficiently numerous to allow class certification, assuming all other requirements are met. Also, Defendants do not contest the numerosity prerequisite. Likewise, the Court is convinced from Plaintiff's allegations that common issues of law and fact exist, thereby satisfying the second prerequisite for class certification.

Regarding the third requirement of Rule 23(a), typicality, the Court is satisfied that Plaintiff's allegations are sufficiently representative of the claims of the class to fulfill this prerequisite. Typicality "does not require precise, mirror-image identity respecting the injuries caused by a single practice or policy...." *International Woodworkers*, 659 F.2d at 1270. Rather, the typicality rule assures that the class representative's interests are aligned with those of the class. Plaintiff contends that she has suffered a loss due to Defendants' failure to comply with applicable securities laws and due to Defendants' fraudulent behavior. Because the class by definition includes all persons similarly harmed by the same, or very similar, actions, Plaintiff appears to be an entirely appropriate representative.

In analyzing whether Plaintiff can adequately protect the interests of the purported class, the Court "must consider the abilities of both the attorneys who represent the class representatives, and the class representatives themselves." *Christman*, 92 F.R.D. at 452 (footnote omitted). The competence of Plaintiff's attorneys is not questioned, and the Court is convinced that they can adequately prosecute this action. Additionally, Plaintiff certainly appears to have the interest and motivation to vigorously pursue her claims in this Court.

Plaintiff seeks certification pursuant to Rule 23(b)(1) and (3). Specifically, Plaintiff alleges that certification is appropriate under either Rule 23(b)(1)(A) or (B), and cites *In re A.H. Robbins Co., Inc.*, 880 F.2d 709 (4th Cir.1989), for the proposition that the general rule disfavoring maintenance of a class action seeking monetary damages under this subsection is not absolute. Plaintiff correctly points out that differing resolutions of a variety of preliminary issues would result in inconsistent adjudications for class members.

■ However, the Court is convinced that Rule 23(b)(1) is not an appropriate basis for this class action. As Defendants point out, referencing a much more factually similar decision, this type of action generally is not appropriate for class certifica-

tion under subsection (b)(1). *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir.1986). A request for money damages generally does not subject the party opposing the class to incompatible standards of conduct. *Id.* (quoting Rule 23(b)(1)(A)). Plaintiff has set forth no reason why this action is different from the typical monetary request situation, nor has Plaintiff demonstrated any manner in which other class members would be prejudiced in this matter if forced to litigate their own claims. There exists no evidence that later plaintiffs would be unable to satisfy a judgment or would be unable to subsequently initiate a civil action of their own. Because the *A.H. Robbins* decision is readily distinguishable from this fact situation and because Plaintiff has shown no prejudice to either Defendants or subsequent plaintiffs, this Court is satisfied that no reason exists to depart from the general rule recognized in *Zimmerman*. Accordingly, if maintainable at all, this class action must fit within the rubric of Rule 23(b)(3).

Rule 23(b)(3) allows the maintenance of a class action satisfying the requirements of subsection (a) if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Court has already determined that the commonality requirement of subsection (a) is satisfied in this action. While the Court agrees with Plaintiff that there exist a fairly large number of common preliminary issues regarding the applicability of federal securities laws and agency principles, the Court believes that issues regarding the liability of Defendants based on the actions outlined earlier hold the key to the Rule 23(b)(3) analysis.

 As Defendants correctly point out, actions alleging securities fraud and common law fraud are not generally amenable to class certification due to the requirement of proving individual reliance upon allegedly fraudulent behavior. *See e.g. Basic v. Levinson*, 485 U.S. 224, 242,

108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988) ("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones."); *The Supreme Court, 1987 Term*, 102 Harv. L.Rev. 143, 348 (1988) ("Class certification is almost impossible with a strict reliance requirement: because every member of the class must prove reliance, individual questions will predominate over common questions and the class will not meet the certification requirements." (footnote omitted)). Plaintiff seeks to avoid this general proscription by arguing that the facts of this action fall within a recognized exception to the requirement of individualized proof of reliance.

Plaintiff first contends that the proposed Amended Complaint sets forth allegations falling within the exception to proving individual reliance recognized in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). The *Affiliated Ute* doctrine presumes individual reliance upon proof that defendants withheld material information from investors. *Id.* at 153–54, 92 S.Ct. at 1472. In these circumstances, omission of such information in violation of an affirmative duty to disclose establishes causation in fact. *Id.* at 154, 92 S.Ct. at 1472 (citing *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1172 (2nd Cir.1970)).

While paragraph 14(a) of the proposed Amended Complaint does indeed claim that "Oglebay failed to disclose that the securities were unsecured promissory notes", the same subparagraph also alleges "Oglebay personally solicited in West Virginia the purchase by plaintiff of what he (Oglebay) called 'lease interests' .... in Government Financial Services, Inc.....". Plaintiff later asserts that a common issue of fact exists regarding "[w]hether the sale of the securities as 'lease interests' was fraudulent...."

The Court notes that in the original Complaint, the language regarding Oglebay's alleged failure to disclose the nature of the

securities was not included in paragraph 14(a). Furthermore, the common question of fact was stated as "[w]hether the sale of the securities as 'lease interests' constituted a *fraudulent representation....*" (emphasis added).

As the above-quoted language makes clear, Plaintiff has merely attempted to rephrase her allegations to fit within the *Affiliated Ute* exception to the requirement of proving reliance. Plaintiff clearly notes in paragraph 15(c) of her Complaint that Defendants' actions are allegedly misrepresentations of fact. While every misrepresentation has an omission as its counterpart (i.e. an omission to truthfully represent the matter at issue), Plaintiff cannot through artful pleading turn a misrepresentation of fact into an omission. *See Miller v. Central Chinchilla Group, Inc.,* 66 F.R.D. 411, 416 (S.D.Iowa 1975).

As an alternative basis for avoiding the effect of proving reliance, Plaintiff asserts that the allegedly fraudulent verbal communications which form the basis for much of this action were identical, thereby presenting common issues of fact concerning the reliance of purported class members. In support of this proposition, Plaintiff references deposition testimony of Defendant Oglebay in which he admits that his sales pitch was essentially the same to all investors. Accordingly, Plaintiff argues that the differences among the representations upon which the class members relied are not significant enough to preclude class certification. *See Kennedy v. Tallant,* 710 F.2d 711 (11th Cir.1983); *Seiler v. E.F. Hutton & Co., Inc.,* 102 F.R.D. 880 (D.N.J. 1984).

Plaintiff's argument ignores the fact that Defendant Oglebay admitted to some variance in his sales pitch according to the sophistication of the investor. Also, he claimed that some investors simply instructed him to invest money in the "leases" without much, if any, description of the investments. Plaintiff's problems in this regard would merely be compounded by expanding the plaintiff class as defined in the proposed Amended Complaint. This Court would then be faced by sales pitches given by five additional representatives of GFS. While some of these representatives have stated that their verbal offers were patterned after Defendant Oglebay's sales pitch, the record is simply insufficient to establish a uniform representation made to the proposed class. Accordingly, this Court does not agree with Plaintiff that sufficient uniformity exists to allow class certification on this basis. *See Glick v. E.F. Hutton & Co., Inc.,* 106 F.R.D. 446, 450 (E.D.Pa.1985) (holding that this sort of representation must be proven on an individual basis).

■ The final possible basis for maintenance of a class action despite the requirement of proving reliance is the "fraud on the market" doctrine adopted in *Basic v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Briefly stated, this doctrine dispenses with the requirement of proving individual reliance in a situation where defendants have made material misrepresentations regarding a security traded on an open and developed market. *Id.* at 241–42, 108 S.Ct. at 988–89 (quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3d Cir. 1986)). Individual reliance may be presumed because investors are presumed to rely on the integrity of the market; if the market has been defrauded, so have individual investors. *Id.* 485 U.S. at 241–45, 108 S.Ct. at 988–90.

The fraud on the market theory is clearly inapplicable in the present action. The misrepresentations alleged were made on an individualized basis rather than a developed market. There is no indication that plaintiffs' reliance, if any, had any basis other than the sales pitches of the GFS representatives.

The Court notes other important issues present in this action preclude class certification. Even assuming that Defendant Oglebay's sales pitch was standardized, the materiality of the pitch and the reasonableness of investor's reliance will vary significantly among the proposed class. Some investors, such as Plaintiff, purchased several "leases" from Oglebay, while others only invested once. While a standardized sales pitch may be presumed to have a

**134**

similar effect upon most first-time buyers, this presumption is inapplicable for investors such as Plaintiff who invested on multiple occasions. These investors would have received the "promissory note" and amortization schedule from GFS after their initial investment. Some would also have received additional information regarding the nature of the investment, as well as Defendant Oglebay's disclaimer of any connection between GFS and Defendant Advantage Capital Corporation. Others, such as Plaintiff, would have received information from acquaintances which should have alerted them to the potential danger of this investment. Accordingly, the reasonableness of the investors' reliance upon a standardized representation will by necessity differ. The above-cited factors will also affect the materiality of the representations, as materiality is generally defined as having a substantial likelihood of being considered important by a reasonable investor in making an investment decision, in light of the total mix of information available to the investor. *See id.* at 232, 108 S.Ct. at 983–84 (adopting this standard for analyzing misrepresentations and omissions under Rule 10b–5); *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (in the context of a shareholder proxy vote). The "total mix" of information in this action will obviously vary among the proposed class members.

The Court need not address the other bases for denial of class certification propounded by Defendants and expresses no opinion regarding these arguments. Accordingly, it is

ORDERED that Plaintiff's Motion for Class Certification be, and the same is hereby, DENIED. It is further

ORDERED that Plaintiff's Motion for Leave to File Amended Complaint be, and the same is hereby, DENIED.

In light of the disposition of these motions, the Court is of the opinion that Plaintiff should be afforded an opportunity to amend her Complaint, if she desires, to incorporate the additional claim presented in the proposed Amended Complaint and to reflect the issues raised and suggested in this Order. Such proposed amended complaint shall be filed within twenty (20) days of the entry of this Order. The Court will resume its consideration of this matter upon expiration of the time for submission of a proposed amended complaint and response thereto.